United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MARIO EDGARDO MELENDEZ,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MOUNTAIN VIEW; BENJAMIN F. KROUTIL; ANTHONY R. REINOSA; JOSHUA K. LAI; AND JEFFREY J. REED,<br><br>Defendants. | Case No. 21-cv-02651-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 20] |

This action arises out of an interaction between Plaintiff Mario Edgardo Melendez and several police officers employed by the City of Mountain View Police Department. Melendez claims that the officers arrested him without probable cause and used excessive force, resulting in violations of his rights under federal and state laws. Melendez sues Defendants City of Mountain View, Officer Benjamin Kroutil, Officer Anthony Reinosa, Officer Joshua Lai, and Sergeant Jeffrey Reed.

Defendants move to dismiss some, but not all, claims of the operative first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

## I. BACKGROUND

Melendez filed this action on April 13, 2021 and filed the operative FAC as of right on April 16, 2021. *See* Compl., ECF 1; FAC, ECF 12. He alleges the following facts, which are accepted as true for purposes of the motion to dismiss.

United States District Court
Northern District of California

On July 27, 2019, at approximately 2:25 a.m., Melendez was legally parked on Castro Street in Mountain View, California. FAC ¶ 22. His car engine was running to warm the car up. *Id*. Officer Kroutil drove past and then made a U-turn and parked behind Melendez's car for several minutes. *Id*. ¶ 23. Officer Kroutil then approached the car and asked Melendez for identification. *Id*. ¶ 24. Melendez declined to provide identification, stating that he had not done anything wrong, and he began recording the incident on his cell phone. *Id*. ¶¶ 24-25. Officer Reinosa then arrived and parked in front of Melendez's car, blocking Melendez from leaving. *Id*. ¶ 26. Officer Kroutil placed a spiked device under the rear driver's side tire of Melendez's car so that moving the car would cause a tire puncture. *Id*. ¶ 28. Officer Kroutil threatened to take Melendez to jail if he did not provide identification. *Id*. ¶ 30. Officer Kroutil also tried to grab Melendez's cell phone out of his hand. *Id*. ¶ 31.

Officer Kroutil and other officers grabbed Melendez's hands, causing his cell phone to fall to the ground and its screen to crack. FAC ¶ 32. The officers yanked Melendez out of the driver's side window and slammed him to the ground, injuring his head, left eye, shoulder, and chest. *Id*. ¶ 33. Officer Lai handcuffed Melendez, cinching the handcuffs tightly and double-locking them. *Id*. ¶ 34. Melendez suffered a concussion and lost consciousness during this incident. *Id*. ¶¶ 35-36. An unnamed officer deleted the video that Melendez had taken on his cell phone. *Id*. 38. Melendez was placed in the back of a patrol vehicle, at which time he requested medical attention. FAC ¶¶ 40. Officer Kroutil stated that they had been prepared to let Melendez go, but because he asked for medical attention he was going to jail. *Id*. ¶ 41. Officer Kroutil called Sergeant Reed, who instructed Kroutil to arrest and book Melendez. *Id*. ¶ 42.

Melendez was transported to the jail at the Mountain View Police Department, and then to the Santa Clara County Jail. FAC ¶ 43. He was held for approximately eight hours and then was released with a citation and a charge of violating California Penal Code § 148(a)(1), which makes it unlawful to resist, delay, or obstruct a police officer in the discharge of the officer's duties. *Id*. Melendez was not given medical treatment while in the jail; he sought treatment for the concussion upon his release. *Id*. ¶¶ 43-44. On September 19, 2019, a criminal complaint was filed against Melendez in the Santa Clara County Superior Court, alleging a single charge of

2

1    violating California Penal Code § 148(a)(1).  *Id.* ¶ 45.  That criminal case was dismissed on

2    October 14, 2020.  *Id.* ¶ 46.

3         Melendez asserts the following claims under 42 U.S.C. § 1983 and state laws:  (1) a § 1983

4    claim for unreasonable seizure under the Fourth Amendment; (2) a § 1983 claim for excessive

5    force under the Fourth Amendment; (3) a § 1983 claim for malicious prosecution under the First,

6    Fourth, and Fourteenth Amendments; (4) a § 1983 claim for violation of the rights of free speech

7    and petition under the First Amendment; (5) a *Monell*[1] claim against the City for failure to train;

8    (6) a § 1983 claim for fabrication of evidence under the First, Fourth, and Fourteenth

9    Amendments; (7) violation of California's Bane Act, Cal. Civ. Code § 52.1; (8) false arrest/false

10   imprisonment; (9) battery; (10) assault; (11) intentional infliction of emotional distress ("IIED");

11   and (12) a § 1983 claim for unreasonable seizure under the Fourth Amendment.

12   **II.    LEGAL STANDARD**

13        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

14   claim upon which relief can be granted tests the legal sufficiency of a claim."  *Conservation Force*

15   *v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted).

16   While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

17   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

18   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

19   claim is facially plausible when it "allows the court to draw the reasonable inference that the

20   defendant is liable for the misconduct alleged."  *Id.*

21   **III.   DISCUSSION**

22        Defendants move to dismiss the FAC, with the exception of certain claims against Officer

23   Kroutil, on numerous grounds.  First, Defendants contend that all claims against Sergeant Reed

24   should be dismissed because there are insufficient factual allegations to state a claim against him.

25   Second, Defendants ask that the City be dismissed from all § 1983 claims except for Claim 5,

26   brought under *Monell*, because the City cannot be held liable on a § 1983 claim except under

27

28   _____
     [1] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

United States District Court
Northern District of California

*Monell*.  Third, Defendants assert that Claim 5, the *Monell* claim, should be dismissed for failure to allege facts showing that the City had notice that additional training was necessary.  Fourth, Defendants argue that Claims 1, 3, 4, and 8 should be dismissed because it appears on the face of the FAC that there was probable cause to arrest Melendez, which is a complete defense to those claims.  Fifth, Defendants contend that Claim 2, for excessive force, fails to state a claim against any officer except Kroutil.  Sixth, Defendants assert that Claim 7, under California's Bane Act, does not allege facts showing the requisite specific intent.  Seventh, Defendants argue that Claims 9 (battery), 10 (assault), and 11 (IIED), are insufficient with respect to Officer Reinosa and Sergeant Reed because those officers are not alleged to have touched Melendez.  Defendants argue that Claim 11 (IIED) also should be dismissed as to Officer Lai, because he is not alleged to have engaged in outrageous conduct.  Eighth, Defendants ask that the claim for punitive damages be dismissed as to the City, as punitive damages are not available against a municipality under either § 1983 or state law.

In opposition, Melendez asserts that he has alleged sufficient facts to state § 1983 claims against all of the individual officers, and to state a *Monell* claim against the City.  Melendez disputes the assertion that probable cause for arrest appears on the face of the FAC.  He also argues that the state law claims are adequately alleged against all of the individual officers.  On the Bane Act claim, Melendez contends that he has alleged specific intent.

The Court takes up the grounds for dismissal asserted by Defendants in turn, as follows.

**A.      Claims Against Sergeant Reed**

Defendants contend that all claims against Sergeant Reed should be dismissed because the FAC does not allege facts sufficient to give rise to liability against him under § 1983 or state law.

With respect to the § 1983 claims, Melendez must plead that Sergeant Reed, through his "own individual actions, has violated the Constitution."  *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) (internal quotation marks and citation omitted).  "A supervisory official may be held liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Id*. at 1242-43 (internal quotation marks and citation

omitted).  "Therefore, the claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability."  *Id*. at 1243 (internal quotation marks and citation omitted).

Melendez alleges facts indicating that Sergeant Reed was not present when Melendez was dragged from his car and arrested.  FAC ¶¶ 22-46.  Melendez describes what Officers Kroutil, Lai, and Reinosa did at the scene, and then alleges:  "Thereafter, defendant KROUTIL and DOES 1 and 2, called his/their Sergeant, defendant REED, who ratified the unlawful conduct of his subordinate officer(s), defendants KROUTIL, REINOSA and DOES 1 through 6, inclusive, and instructed said other defendants to arrest and to book and prosecute the plaintiff."  FAC ¶ 42.  Melendez also alleges that Sergeant Reed "approved" police reports prepared by Officer Kroutil and others.  FAC ¶ 63.  Those allegations suggest that Melendez seeks to hold Sergeant Reed liable on a ratification theory.  While ratification is a viable theory under the legal standard set forth above, it is not clear from Melendez's allegations whether Sergeant Reed knew of the alleged constitutional violations when he directed that Melendez be arrested and approved the later police report.

In conflict with allegations indicating that Sergeant Reed was not present, Melendez also alleges that "KROUTIL, REINOSA, LAI, REED and DOES 1 through 6, inclusive, forcibly pulled plaintiff out of his vehicle's driver's side window, who then slammed his face and body to the ground/street, causing injuries to plaintiffs head, left eye, shoulder and chest."  FAC ¶ 52.  Clearly, Sergeant Reed can be held liable for his own personal involvement in the alleged constitutional violations.  However, given the conflict in Melendez's factual allegations as to whether Sergeant Reed was or was not at the scene, the Court finds that Melendez has not plausibly alleged that Sergeant Reed personally participated in the alleged violations.

Even after careful review of the FAC, the Court cannot tell what acts Sergeant Reed is alleged to have committed.  In particular, the Court cannot tell whether Melendez's theory is that Sergeant Reed himself was at the scene and laid hands on Melendez, or whether the theory is that Sergeant Reed was not at the scene but knew of and ratified the alleged constitutional violations of

United States District Court
Northern District of California

his subordinates.  In light of this uncertainty, the Court finds that Melendez has failed to state a plausible claim against Sergeant Reed under § 1983.  For the same reason, Melendez has failed to state a claim under state law.  Sergeant Reed is named as a defendant in the following state law claims:  Claim 7 for violation of the Bane Act, Claim 8 for false arrest/false imprisonment, Claim 9 for battery, Claim 10 for assault, and Claim 11 for IIED.  Melendez cannot proceed on these claims without alleging facts showing what role Sergeant Reed played in Melendez's detention and its aftermath.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to all claims asserted against Sergeant Reed.

### B.     Non-*Monell* Claims Asserted Against the City under § 1983

Defendants ask that the City be dismissed from all § 1983 claims except for Claim 5, which is brought under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).  "The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. at 694).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  The Court therefore finds it appropriate to grant the motion to dismiss as to all non-*Monell* § 1983 claims asserted against the City.  Melendez does not oppose this aspect of Defendants' motion.

The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to all § 1983 claims against the City except for Claim 5, brought under *Monell*.

### C.     Claim 5 – *Monell*

Claim 5 is a *Monell* claim against the City for failure to train.  "[A] municipal defendant can be held liable because of a failure to properly train its employees only if the failure reflects a 'conscious' choice by the government."  *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016).  In order to prevail under this theory, the plaintiff must show that the municipality's training policies amounted to "deliberate indifference to the rights of persons with whom the untrained employees come into contact."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal

United States District Court
Northern District of California

1  quotation marks, citation, and alteration omitted).  "A pattern of similar constitutional violations

2  by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes

3  of failure to train."  *Id*. (internal quotation marks and citation omitted).  However, "[t]he Supreme

4  Court has reaffirmed that in a narrow range of circumstances a particular showing of obviousness

5  can substitute for the pattern of violations ordinarily necessary to establish municipal culpability."

6  *Kirkpatrick*, 843 F.3d at 794 (internal quotation marks and citation omitted).  "Such a situation is

7  rare – the unconstitutional consequences of failing to train must be patently obvious and the

8  violation of a protected right must be a highly predictable consequence of the decision not to

9  train."  *Id*. (internal quotation marks and citation omitted).

10        Here, Melendez alleges that the City's training policies were inadequate because the City

11  failed to train its officers:

> that they have no right to: 1) use excessive / unreasonable force on persons who are
> not actively resisting them; 2) order persons to produce identification under threat
> of arrest, and to arrest persons for failing to identify themselves to the police, 3)
> unlawfully and unreasonably seize persons for failing to identify themselves; 4)
> unlawfully search persons who are not reasonably suspected of being armed and
> dangerous, and, whom the Mountain View Police Officers have suspicion of
> criminality afoot about; 5) interfere with persons' and/or otherwise violate persons'
> constitutionally protected right to free speech; and 6) cover-up unlawful and
> tortious conduct by Mountain View Police Department personnel, and were a
> proximate cause of the very same California state law, and federal and state
> constitutional violations complained above, and complained of by the plaintiff in
> this action.

19  FAC ¶ 87.  Melendez has not alleged a pattern of similar constitutional violations by the City's

20  police officers arising from the alleged failure to train in these areas.  Nor has he alleged facts

21  showing that this case falls into the "narrow range of circumstances" in which the risk of

22  constitutional violation is so obvious that a pattern of similar violations need not be alleged.

23  Claim 5 is subject to dismissal on these grounds.

24        Melendez argues that in order to make out a *Monell* claim, he need only allege in

25  conclusory fashion that the failure to train was the cause of the alleged constitutional violations.

26  However, all of the published cases he cites predate *Connick* and *Kirkpatrick*, discussed above, by

27  a decade or more.  The only recent case cited is an unpublished memorandum disposition, *Reyes v.*

28  *City of Santa Ana*, 832 F. App'x 487 (9th Cir. 2020).  *Reyes* is not precedent.  *See* Ninth Circuit

1    Rule 36-3, 28 U.S.C., CTA9 Rule 36-3.  Moreover, the Ninth Circuit's holding in *Reyes* is not in

2    conflict with *Connick* and *Kirkpatrick*.  Melendez points to a single line of the *Reyes*

3    memorandum stating that "a *Monell* claim filed by way of 42 U.S.C. § 1983 will withstand a

4    motion to dismiss even if the claim is based on nothing more than a bare allegation that the

5    individual officers' conduct conformed to official policy, custom, or practice."  *Reyes*, 832 F.

6    App'x at 492 (internal quotation marks and citation omitted).  That statement, taken out of

7    context, would appear to support Melendez's position.  However, the Ninth Circuit's actual

8    holding in *Reyes* supports this Court's conclusion that dismissal of Melendez's *Monell* claim with

9    leave to amend is appropriate.

10        In *Reyes*, the plaintiff-appellant challenged the district court's dismissal of his *Monell*

11   claim against the City of Santa Ana without leave to amend.  *See Reyes*, 832 F. App'x at 492.  The

12   Ninth Circuit reversed the denial of leave to amend, pointing to record evidence of a pattern of

13   illegal conduct, including deposition testimony "that Santa Ana Police Department officers

14   routinely arrest individuals by employing the same procedure used to detain Reyes."  *Id*.  The

15   Ninth Circuit held that under applicable pleading standards, the plaintiff-appellant should have

16   been afforded an opportunity to remedy any defects in his *Monell* claim by amending to add these

17   additional facts.  *See id.* at 493.  This Court likewise finds that Melendez should be afforded an

18   opportunity to remedy the defects in his *Monell* claim by amending to add facts showing a pattern

19   of similar constitutional violations as in *Reyes* or, alternatively, facts obviating the need for pattern

20   allegations.

21        The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 5.

22        **D.    Probable Cause**

23        Defendants argue that it appears on the face of the FAC that there was probable cause to

24   arrest Melendez, which Defendants argue is a complete defense to Claim 1 for unreasonable

25   seizure, Claim 3 for malicious prosecution, Claim 4 for violation of the rights of free speech and

26   petition, and Claim 8 for false arrest/false imprisonment.  Specifically, Defendants contend that

27   the facts alleged in the FAC establish Melendez's violation of California Vehicle Code provisions

28   requiring a driver to present a driver's license and vehicle registration upon request.  *See* Cal. Veh.

United States District Court
Northern District of California

Code §§ 4462 (registration); 12951 (driver's license).  Melendez argues that §§ 4462 and 12951 do not apply, and that the mere failure to identify oneself is not a crime in California.

The Court concludes that the facts alleged in the FAC do not establish probable cause to arrest Melendez for violation of §§ 4462 or 12951.  Melendez does not allege that Officer Kroutil or any other officer asked him for his driver's license or vehicle registration, which are the only documents governed by §§ 4462 and 12951.  He alleges that the officers asked him for "identification."  FAC ¶¶ 24, 30.  Under these circumstances, the existence of probable cause more properly may be addressed at the summary judgment stage on a developed record.  The Court therefore will deny Defendants' motion to dismiss based on the asserted existence of probable cause.

The motion to dismiss is DENIED as to Claims 1, 3, 4, and 8 to the extent the motion is based on Defendants' assertion that probable cause to arrest is established on the face of the FAC.

### E.    Claim 2 – Excessive Force

Claim 2, for excessive force, is asserted against all Defendants.  As discussed above, this claim is subject to dismissal with leave to amend as to Sergeant Reed, and without leave to amend as to the City.  Defendants contend that the excessive force claim likewise should be dismissed as to Officers Reinosa and Lai.  The Court agrees.  A number of the FAC's allegations indicate that Officer Reinosa's only role in the incident was to park in front of Melendez, and that Officer Lai's only role was to handcuff Melendez.  FAC ¶¶ 22-46.  Those allegations are insufficient to state a claim for excessive force.  While "tight handcuffing can constitute excessive force," *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000), Melendez has not alleged that Officer Lai cuffed him so tightly as to cause him pain or injury.  FAC ¶ 34.

Melendez points to the single allegation in the FAC, discussed above, that "KROUTIL, REINOSA, LAI, REED and DOES 1 through 6, inclusive, forcibly pulled plaintiff out of his vehicle's driver's side window, who then slammed his face and body to the ground/street, causing injuries to plaintiffs head, left eye, shoulder and chest."  FAC ¶ 52.  That allegation conflicts with other allegations indicating that Officers Reinosa and Lai were not involved in pulling Melendez out of his car.  FAC ¶¶ 22-46.  Because it is unclear from the FAC whether any of the individual

9

defendants other than Officer Kroutil pulled Melendez from the car or otherwise injured him, the excessive force claim is subject to dismissal as to all individual defendants other than Officer Kroutil.

Melendez argues that the defendant officers may be liable for failure to intervene to stop Officer Kroutil's unlawful conduct.  He points out that Claim 2 contains an allegation that "defendants LAI and DOES 1 through 6, inclusive, failed to intervene in the unreasonable seizure and arrest of the plaintiff."  FAC ¶ 34.  While "officers can be held liable for failing to intercede" to prevent the violation of constitutional rights, *see Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), failure to intercede is a claim separate from excessive force and Melendez has not pled it here.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 2 with respect to all defendants other than Officer Kroutil.

### F.      Claim 7 – Bane Act

Defendants assert that Claim 7, under California's Bane Act, Cal. Civ. Code § 52.1, does not allege facts showing the requisite specific intent.  Melendez contends that he has alleged sufficient facts.

The Bane Act makes actionable "interfere[nce] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(b).  "[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."  *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (internal quotation marks and citation omitted).  However, "the Bane Act requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  *Id*. (internal quotation marks and citation omitted).

Melendez's Bane Act claim does not use the word "intent" or otherwise allege facts sufficient to meet the specific intent requirement.  FAC ¶¶ 106-113.  Melendez argues that specific intent may be inferred from the allegations that the individual defendants used violence and threats

10

against Melendez.  However, under the legal standard set forth above, Melendez must allege specific intent with particularity.  Moreover, as discussed with respect to other claims in the FAC, it is unclear from Melendez's allegations what role each of the individual defendants played in the incident.  Melendez must allege what each officer did, and that each officer had the requisite specific intent to violate his constitutional rights.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 7.

### G.    Claims 9 (Battery), 10 (Assault), and 11 (IIED)

Defendants argue that Claims 9 (battery), 10 (assault), and 11 (IIED), are insufficient with respect to Officer Reinosa and Sergeant Reed because those officers are not alleged to have touched Melendez.  Defendants argue that Claim 11 (IIED) also should be dismissed as to Officer Lai, because he is not alleged to have engaged in outrageous conduct.  As discussed as herein, it is unclear from Melendez's allegations what role each of the individual defendants played in the incident.  The FAC contains allegations indicating on the one hand that Officer Reinosa and Sergeant Reed did not touch Melendez, and that Officer Lai did no more than handcuff Melendez, FAC ¶¶ 22-46, and a conflicting allegation indicating that all individual officers laid hands on Melendez to drag him out of his car FAC ¶ 52.  Given these conflicting allegations, Melendez has not alleged a plausible claim for battery or assault against Officer Reinosa or Sergeant Reed, and had not alleged a plausible claim for IIED against Officer Reinosa, Sergeant Reed, or Officer Lai.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims  9, 10, and 11, as asserted against Officer Reinosa, Sergeant Reed, and Officer Lai.

### H.    Punitive Damages Against the City

Finally, Defendants moved to dismiss the claim for punitive damages as to the City, as punitive damages are not available against a municipality under either § 1983 or state law.  "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  California Government Code § 818 bars punitive damages against the City with respect to the state law claims.  *See* Cal. Gov't Code § 818.  This bar applies to Melendez's request for treble damages under the Bane Act.  *See Archibald v. Cty. of San Bernardino*, No. ED CV 16-01128-AB (SPx), 2018 WL 8949779, at *2 (C.D. Cal. May 10,

United States District Court
Northern District of California

2018).  Melendez does not oppose Defendants' motion to dismiss his punitive damages claims against the City.

The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to all claims of punitive damages against the City.

## IV.   ORDER

(1)   The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to:

   (a)   all claims against Sergeant Reed;

   (b)   Claim 5, the *Monell* claim against the City;

   (c)   Claims  9, 10, and 11 as to Officer Reinosa, Sergeant Reed, and Officer Lai.

(2)   The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to:

   (a)   all § 1983 claims against the City other than Claim 5 under *Monell*;

   (b)   all claims of punitive damages against the City.

(3)   The motion to dismiss is DENIED as to Claims 1, 3, 4, and 8 to the extent the motion is based on Defendants' assertion that probable cause to arrest is established on the face of the FAC.

(4)   Melendez is granted until December 8, 2021 to file an amended pleading.

(5)   Amendment is limited to the defects identified in this order.  No additional claims or parties may be added without express leave of the Court, with the exception that Plaintiff may add a claim for failure to intercede, as he alleged facts that could support such a claim in the FAC but failed to allege the claim separately.

Dated:  November 17, 2021

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California